UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MARK J. BROWN,** as personal representative of the Estate of W. Earl Richards, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| vs. | )   CV 07-B-0675-S<br>) |
| **KENWORTH OF BIRMINGHAM, INC.,** | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Partial Summary Judgment. (Doc. 53.)[1] Plaintiff Mark J. Brown, as the personal representative of the estate of W. Earl Richards has sued Richards's former tenant, Kenworth of Birmingham, Inc., for damages to his property. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Partial Summary Judgment, (doc. 53), is due to be granted in part and denied in part.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every ***reasonable*** inference." *Evans v. Stephens*, 407 F.3d 1272, 1284 (11th Cir. 2005)(quoting *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(emphasis added).

## II. STATEMENT OF FACTS

From 1978 through 2003, plaintiff leased real property to defendant. (Doc. 53, Ex. 1; *id.*, Ex. 3.) Defendant operated a truck maintenance facility on plaintiff's property during that time. (*Id.*, Ex. 7 at Bhate-0433.) Plaintiff alleges that, during the time it occupied his property, defendant contaminated the property with petroleum waste and petroleum spillage. (Doc. 1 ¶¶ 18-21.)

On November 1, 2006, plaintiff's former counsel, Byron Bart Slawson, sent defendant a letter, providing defendant with statutory notice of plaintiff's intent to sue defendant pursuant to 42 U.S.C. § 6972(a)(1)(B) of the Resource Conservation and Recovery Act [the "RCRA"]. (Doc. 53, Ex. 31.) Defendant disputed it violated RCRA. (*Id.*, Ex. 13 at 2.) Shortly thereafter, on December 18, 2006, defendant's counsel, John Galese, sent an email to Slawson in which he proposed "to request a voluntary ADEM request for assistance, [to] meet with ADEM to develop[ ] a remedial action plan, [to] implement the plan, [to] complete the plan and [to] obtain a No Further Action letter from ADEM for [plaintiff]." (*Id.*, Ex. 14.) He stated, "Our experts will handle all of this with no cost to your client," and asked if plaintiff would allow defendant on the property. (*Id.*) Slawson responded and told Galese:

> Of course we will have to agree on settlement terms before we get too far down the road here. Once we have a signed settlement agreement, I'm sure clean up can proceed quickly. As you can imagine, my client is out quite a bit of money in costs, lawyer and expert fees and rents, lost sale, etc. Bhate [plaintiff's expert] will have to be retained to monitor any activity on site by your experts. When would you like to start working on the settlement document?

(*Id.*, Ex. 15.) Galese stated in response:

> From the first contact with [plaintiff] advising of the potential for soil contamination, [defendant] has been ready, willing and able to fulfill any legal responsibility it had. It only asked for and, until you were engaged, was refused the Bhate report. Once you provided that report, at my first request of you, we entered the property and independently evaluated the on site condition of the property. [Defendant] has agreed to deal directly with ADEM, develop, implement and complete a remediation plan, with a final approval of its remediation work by ADEM, with its issuance of a no further action letter. That is the standard by which we expect to be judged. This offer to remediate on these terms is not an offer of settlement and if your client believes he possesses some claim for additional damages, etc., so be it. We would like, but would not demand, a release as a condition of performing the remediation work that our experts advise is required, and which will result in the ADEM no further action letter. If you want Bhate to inspect the work, when completed, it will not be at our expense. If your client wants to mitigate his alleged damages, this is certainly a way to do so. If, however, what your client wants, is to create a basis for litigation, I cannot stop that. However, since our remediation proposal is both reasonable and proper, and not related to any settlement offer, we expect your client's failure or refusal to permit us to do so, to be addressed as a failure to mitigate alleged damages, etc. As far as "damages" and "attorney's fees" are concerned, the record will support our position that but for your client's failure and refusal to produce the Bhate report on which he relied, a year ago, was the direct and proximate result of our delay in agreeing to remediate. We will, of course, be interested in seeing the basis for a damage claim and a claim of attorney's fees to date and we will timely address those issues. It seems to me that we can both posture all day, every day, but in the end, the reality is that [defendant] has agreed, with its experts, at its expense, to remediate to the approval of ADEM. What's the problem?

(*Id.*, Ex. 16.)

On February 20, 2007, Slawson sent Galese an email, which stated: "While it is fascinating that a remedial plan is being prepared for approval by the state, that activity is taking place without the authority of my client[,] the landowner[,] and will therefore be a

nullity." (*Id.*, Ex. 18.) On that same day, Slawson sent another email to Galese, which stated:

> This property belongs to my client. Not [defendant] and not ADEM. Therefore, he has a right to say what will and will not happen there, especially in view of the fact that [defendant] contaminated it in the first place.
>
> Are you saying [defendant] wishes to do extensive remedial work to [plaintiff's] property without giving [him] any input? Are you saying [defendant's] contamination of the property cause[d] no damage? Are you saying [plaintiff] didn't lose out on rents and sales because of your client's actions?
>
> . . . [Plaintiff] will not allow some improper, nonstandard, slap dash secret clean up to occur. Any clean up will require prior approval by [plaintiff] and his experts and the ongoing monitoring of any work by those experts. Any actions other than a proper, authorized, monitored cleanup as is standard in the industry will be rejected.
>
> As for damages, do you have a counter offer for the damages, costs and fees we outlined in our letter?

(*Id.*, Ex. 23.)

> Galese responded:
>
> I have never suggested my client's experts would improperly, slap dash clean up the property in some nonstandard way . . . . It appears, however from your approach to this matter, that you will not permit your client to accept my client's clean up offer, to be performed to ADEM's standards. If not to ADEM's standards, what regulatory body's standards would you suggest be followed? If my client incurs the cost to complete the clean up to ADEM's standards with final ADEM approval, using skilled professionals to do so, your professionals have every opportunity to re-test and, if my client's remediation is found not be properly completed in compliance with ADEM regulations, your client still has his claim which he can pursue. You want to link an agreement on alleged damages and fees, as a pre-condition of permitting remediation. I am aware of no law or rule supporting that position and as far as I can tell we do not have to resolve alleged monetary damage and attorney

5

fee claims as a precondition of remediation. I do not intend to engage in posturing and neither my client nor I have any interest in delay to increase legal fees or damage claims. My client is and has been ready, willing and able to complete remediation required by ADEM and controlling regulations, at its cost, and, because of lack of progress in dealing with you, has instructed its remediation team to complete the plan and obtain approval from ADEM. Does this mean we accept responsibility? No. It means we are willing to clean up the property to ADEM's standards to avoid the costs of litigation. Advise if you will permit us to do so or not, without any precondition of settlement or release, i.e, we are not asking for a release as a condition of our remediation efforts to ADEM's standards and will not expect to be delayed in the remediation process, or expect, in any litigation, a claim of failure to mitigate damages, among other defenses. Please advise.

(*Id*., Ex. 24.)

Defendant repeated its offer to perform remediation of the property "to the extent of getting a No Further Action letter or its equivalent from ADEM." (Doc. 53, Ex. 30; *see also id*., Exs. 26, 28, 29.) However, plaintiff "condition[ed] re-entry of the site for clean up on a written settlement agreement, which [plaintiff contends was] standard practice in cases of this kind." (Doc. 56, Ex. 14 at 6.) Slawson testified that he had never "heard of a competent RCRA clean up done with no written agreement on remediation scope, . . . coordination of experts sand a workable plan." (*Id*. at 6-7.)

Plaintiff filed this action on April 13, 2007.

### III. DISCUSSION

### A. UNCLEAN HANDS[2]

---

[2]Defendant contends that its Motion should be granted as to the claim because plaintiff "did not even mention [its] RCRA arguments. (*See* doc. 57 at 8-9.) However, plaintiff did respond to these arguments and argues that defendant's Motion "is due to be denied as to

Defendant contends that plaintiff's claim for injunctive relief pursuant to the RCRA is due to be dismissed based on the doctrine of unclean hands.  Defendant argues, "Plaintiff provided a notice [of a violation of the RCRA] to Kenworth but then actively prevented Kenworth from being able to come into compliance with the law.  As such Plaintiff's claim for injunctive relief should be barred by Plaintiff's unclean hands in frustrating the purpose of the notice provision of RCRA."  (Doc. 53 at 16.)

The court notes that the Supreme Court has "rejected the unclean hands defense 'where a private suit serves important public purposes.'"  *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 360 (1995)(citing *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 138 (1968); 2 S. Symons, POMEROY'S EQUITY JURISPRUDENCE § 397, pp. 90-92 (5th ed. 1941)); *see also Chemical Waste Management, Inc. v. Armstrong World Industries, Inc.*, 669 F. Supp. 1285, 1291 n.7 (E.D. Pa. 1987)("The court previously has stated that the 'unclean hands' doctrine . . . has no place in CERCLA actions.").  "The purpose of the [RCRA] citizen suit is to authorize persons directly injured by an environmental violation to act as private attorneys general and enforce RCRA's requirements."  *College Park Holdings, LLC. v. Racetrac Petroleum, Inc.*, 239 F. Supp. 2d 1334, 1346 (N.D. Ga. 2002)(citing *Briggs & Stratton Corp. v. Concrete Sales & Serv., Inc.*, 20 F. Supp. 2d 1356, 1374 (M.D. Ga. 1998)).  The court finds an RCRA citizen suit serves

---

Section II."  (Doc. 56 at 6-10.)

an important public purpose. Therefore, the court finds that the maxim of unclean hands does not apply to plaintiff's claim for injunctive relief.

However, even if the court were to apply the maxim in this case, plaintiff's conduct would not bar his claims. Defendant must establish two requirements to bar plaintiff's equitable claims: "First, [it] must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted. Second, even if directly related, the plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by [his] conduct." *Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993)(citing *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933); *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979), *cert. denied*, 445 U.S. 917 (1980)).

Defendant alleges that plaintiff has prevented it from taking steps to remediate the property. (Doc. 53 at 17.) However, the court finds nothing "wrongful" in plaintiff's conduct. Plaintiff has the right to control defendant's access to his property, including the right to refuse defendant access. His refusal to give defendant full, unfettered access to his property does not change the equities between the parties. Although defendant may not have been allowed to take remedial measures at the time and in the manner it wanted, at this point the court does not see where defendant's position is this case has been prejudiced by plaintiff's conduct.

Defendant's Motion for Summary Judgment as to plaintiff's claim for injunctive relief pursuant to the RCRA is denied.

## B. ATTORNEYS' FEES AND COURT COSTS

Section § 6972 (e) states, "The court, in issuing any final order in any action brought pursuant to this section or section 6976 of this title, may award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing or substantially prevailing party, whenever the court determines such an award is appropriate." 42 U.S.C. § 6972. The court finds that defendant's request to dismiss plaintiff's claim for court costs and attorneys' fees prior to any determination that plaintiff is a prevailing or substantially prevailing party is premature. The court will deny defendant's Motion for Partial Summary Judgment on this ground. However, defendant may renew its objection if plaintiff should prevail.

## C. STATUTE OF LIMITATIONS

In his Complaint, plaintiff alleges:

> Defendant negligently disposed of toxic and prohibited chemicals in the area surrounding the Birmingham plant. Defendant failed to properly supervise the disposal of toxic and prohibited chemicals at the Birmingham plant. Defendant failed to properly monitor and clean up its leasehold property, thereby negligently allowing the further discharge of toxic and prohibited chemicals onto the properties around the plant.

(Doc. 1 ¶ 29.)

In response to defendant's Motion for Partial Summary Judgment, plaintiff contends that defendant's negligence is continuing because defendant has "fail[ed] to restore the Plaintiff's property." (Doc. 56 at 10.) However, defendant's last opportunity to restore the

9

property was January 1, 2004. The statute of limitations for negligence actions in Alabama is two years. Ala. Code § 6-2-38(*l*). This case was filed on April 13, 2007, more than two years after defendant had access to the property.

> "When a tort is deemed continuous, ***the limitations period runs from the last date the plaintiff was exposed to damages***." *Haynie v. Howmedica Osteonics Corp.*, 137 F. Supp. 2d 1292, 1294 (S.D. Ala. 2000). In *Moon v. Harco Drugs, Inc.*, 435 So. 2d 218 (Ala. 1983), the Alabama Supreme Court explained that a continuous tort occurs when a defendant engages in "***repeated tortious conduct*** which has ***repeatedly and continuously injured a plaintiff***." *Id*. at 220. Where a continuous tort exists, the result is analogous to continuing trespass, such that "the ***repeated actions*** of the defendants combined to create a single cause of action in tort." *Id*. at 221. The ultimate effect of a continuous tort is to extend the statute of limitations by compressing a protracted course of conduct into a single cause of action. *Id*.; *see also Reichert v. City of Mobile*, 776 So. 2d 761, 766 (Ala. 2000)(continuous torts toll the running of the statutory limitations period). However, Alabama courts have clarified that the "continuous tort" doctrine is not available in instances where a ***single act*** is followed by multiple consequences, but rather requires "***repetitive acts or ongoing wrongdoing***." *Payton v. Monsanto Co.*, 801 So. 2d 829, 835 & n.2 (Ala. 2001).

*LaBauve v. Olin Corp.*, 231 F.R.D. 632, 655-56 (S.D. Ala. 2005)(emphasis added).

The undisputed facts show that defendant's access to plaintiff's property ceased when it vacated the property on January 1, 2004. After this date, defendant did nothing to damage plaintiff or his property. Therefore, the court finds plaintiff has not presented substantial evidence of a disputed issue of fact regarding any "repeated acts of negligence" by defendant that "would extend the statutory limitations period." *Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220-21 (Ala. 1983).

The court finds that the last possible date of any negligent act by defendant was January 1, 2004. Plaintiff's claim was filed on April 13, 2007. Thus, plaintiff's negligence claim is time-barred and due to be dismissed.

Defendant's Motion for Partial Summary is due to be granted and plaintiff's negligence claim is due to be dismissed.

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law as to plaintiff's negligence claim. An Order granting defendant's Motion for Partial Summary Judgment, (doc. 53), and dismissing plaintiff's negligence claims will be entered contemporaneously with this Memorandum Opinion. The remainder of defendant's Motion for Partial Summary Judgment will be denied.

**DONE**, this the 24th day of September, 2008.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE .